J-A09025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.M.C.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.R.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2336 EDA 2021 |

Appeal from the Decree Entered October 26, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000413-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: L.C.-R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2399 EDA 2021 |

Appeal from the Order Entered October 26, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001852-2019

BEFORE:   NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED AUGUST 16, 2022**

M.R. ("Mother") appeals from the decree involuntarily terminating her parental rights to her daughter, L.M.C.R. a/k/a L.C.-R. ("Child"), and the order changing Child's permanency goal to adoption.   Additionally, counsel for Mother, Elizabeth Larin, Esquire ("Counsel"), has filed a brief pursuant to

---

[*] Retired Senior Judge assigned to the Superior Court.

*Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), and petitioned to withdraw. We grant Counsel's petition to withdraw, affirm the decree involuntarily terminating Mother's parental rights, and dismiss Mother's appeal from the goal change order as moot.

The relevant factual and procedural history is as follows. Mother was incarcerated when Child was born in December 2019. N.T., 10/26/21, at 8. The Department of Human Services of the City of Philadelphia ("DHS") removed Child from Mother and placed her in kinship care with her maternal grandmother ("Maternal Grandmother") in December 2019.[1] *Id*. at 8-9. The juvenile court adjudicated Child dependent on January 6, 2020, and established Child's permanency goal as return to parent or guardian. The court conducted regular permanency review hearings at which it found Mother to be minimally compliant or non-compliant with the permanency plan and not progressing toward alleviating the circumstances necessitating placement. The court maintained Child's commitment and placement goals throughout these proceedings.

On July 23, 2021, DHS filed a petition for the termination of parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and a petition for goal change to adoption. The court held a hearing on the petitions

---

[1] Notwithstanding Mother's incarceration, the Community Umbrella Agency ("CUA") case manager, Veronica Soto, described Mother's prior housing conditions as "deplorable." N.T., 10/26/21, at 8-9.

on October 26, 2021. Mother, who was represented by Community Legal Services, did not attend the hearing. DHS presented the testimony of Ms. Soto. A member of the Defender Association of Philadelphia, Child Advocacy Unit, represented Child, who was nearly two years old.[2]

At the hearing, Ms. Soto reported that a single case plan ("SCP") had been established setting forth the following objectives for Mother: make her whereabouts known; locate and occupy adequate housing; have supervised visits with Child; complete and participate in Behavioral Health Services ("BHS") mental health assessment; sign releases; and attend the Achieving Reunification Center ("ARC") for parenting, housing, and employment. N.T.,

---

[2] Pursuant to **In re Adoption of K.M.G.**, 240 A.3d 1218, 1236 (Pa. 2020), we must verify that the court appointed counsel to represent Child, and if counsel served in a dual role, that the court determined before appointment that there was no conflict between a child's best and legal interests. For children too young to express a preference, there is no conflict between the child's legal and best interests, and the child's right to counsel is satisfied by the appointment of an attorney-guardian *ad litem* ("GAL"). **See In re T.S.,** 192 A.3d 1080, 1092-93 (Pa. 2018). Here, because Child was less than two years old at the time of the proceeding, the GAL did not have a conflict in representation.

We additionally observe that, while the trial court appointed counsel in 2019 to represent Child as GAL/counsel in the dependency matter, it did not appoint GAL/counsel in the termination matter. **Cf**. **id**. at 1090 n.19 (stating, "It would be a better practice for the court to place an order on the record formalizing the GAL's role for termination purposes. Nevertheless, we are disinclined to elevate form over substance.") (internal citations omitted).

10/26/21, at 9-10.[3]  Ms. Soto stated that when she spoke with Mother, she explained Mother's objectives and what was required for reunification.  N.T., 10/26/21, at 11.  Ms. Soto confirmed that Mother's objectives remained substantially the same throughout the case and that Mother had not complied with or completed any of the stated objectives.  *Id*. at 10.  Ms. Soto further testified that Child has been placed with Maternal Grandmother since birth and, although available, Mother never engaged in in-person supervised visitation with Child.[4]  *Id*. at 8-9, 11-12, 16.  As such, Maternal Grandmother is the party who meets Child's daily needs and whom Child identifies as a parental figure.  *Id*. at 12, 16.  In explaining her opposition to reunification, Ms. Soto stated, "There is no relationship between [Mother] and [Child].  [Child] does not know [Mother] as a parental caregiver."  *Id*. at 12-13.

Following the hearing, the court entered a decree terminating Mother's parental rights pursuant to section 2511(a)(1) and (b), and issued an order changing Child's permanency goal to adoption.  On November 23, 2021,

---

[3] We observe that many of these objectives as described by Ms. Soto were provisions ordered by the court.  *See* Permanency Review Orders, 6/11/20, 11/4/20.

[4] At the time of adjudication and disposition, the court permitted weekly supervised visits at the agency, which the court then modified to virtual visits.  *See* Order of Adjudication and Disposition, 1/6/20; Permanency Review Order, 6/11/20.  Thereafter, Mother was afforded liberal visitation supervised by Maternal Grandmother and visitation supervised by CUA once per month.  N.T., 10/26/21, at 12; Permanency Review Order, 11/4/20.  Mother instead utilized virtual video calls through Facebook.  N.T., 10/26/21, at 12.  The record is silent as to the frequency of these video calls.

Mother filed timely, counseled notices of appeal from the decree terminating her parental rights and the goal change order, in addition to concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[5] The court likewise complied with Rule 1925.

Thereafter, Counsel filed petitions to withdraw, as well as **Anders** briefs. This Court then *sua sponte* consolidated Mother's appeals. On June 7, 2022, this Court denied Counsel's petitions to withdraw and directed Counsel to file either an advocate's brief or an amended **Anders** brief. **Interest of L.C.M.R.,** 2022 WL 2047110 (Pa. Super. Jun. 7, 2022) (unpublished memorandum at *2). On June 27, 2022, Counsel filed a new **Anders** brief for the now-consolidated appeal but failed to file a new petition to withdraw. On July 13, 2022, this Court ordered Counsel to file a petition to withdraw. Counsel re-petitioned to withdraw on July 21, 2022. This matter is now ripe for our disposition.

When counsel files an **Anders** brief, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. **See In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending **Anders** principles to appeals involving the termination of parental rights); **see also In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (providing that counsel appointed to represent an indigent parent on appeal from a decree

---

[5] Mother had previously filed a *pro se* notice of appeal from the decree terminating her parental rights.

involuntarily terminating parental rights may petition this Court for leave to withdraw representation and submit an *Anders* brief).

To withdraw, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). Counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

We review Counsel's *Anders* brief for compliance with the requirements set forth in *Santiago*. Under *Santiago*, Counsel must

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

978 A.2d at 361. "Once counsel has satisfied the [*Anders*] requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Edwards*, 906 A.2d 1225, 1228 (Pa. Super. 2006) (citation omitted).

Counsel's petition to withdraw certifies her conscientious review of the record and determination that Mother's appeals are frivolous. Likewise, Counsel has also filed an ***Anders*** brief that substantially complies with the requirements set forth in ***Santiago***. Counsel's ***Anders*** brief includes a summary of the procedural history and facts of the case, the issues raised by Mother that arguably support the appeal, and Counsel's assessment regarding why the appeal is frivolous with citations to relevant legal authority. Finally, Counsel attached to her petition a letter she sent to Mother informing her of her rights. ***See Cartrette***, 83 A.3d at 1032; ***Millisock***, 873 A.2d at 752. Accordingly, Counsel complied with the requirements of ***Anders*** and ***Santiago***. We therefore conduct our independent review to determine whether Mother's appeal is wholly frivolous.

Counsel's ***Anders*** brief identifies the following issues for our review:

1. Did the trial court commit an error of law and abuse of discretion by involuntarily terminating [Mother's] parental rights?

2. Did the trial court commit an error of law and abuse of discretion by changing [Child's] permanency goal from reunification with parent to adoption?

***Anders*** Brief at 2.

We review involuntary termination orders for an abuse of discretion, which requires an error of law or a showing of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***See In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021) (citation omitted). In applying this standard, appellate courts must accept the trial court's findings of fact and credibility

- 7 -

determinations if they are supported by the record. ***Interest of S.K.L.R.***, 256 A.3d 1108, 1123 (Pa. 2021); ***see also In re Adoption of C.M.***, 255 A.3d 343, 358 (Pa. 2021).

Pennsylvania's Adoption Act ("the Act") governs involuntary termination of parental rights proceedings. ***See*** 23 Pa.C.S.A. § 2101-2938. Subsection 2511(a) provides grounds for involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b). ***Id***. § 2511(b).

In this case, the trial court terminated Mother's parental rights pursuant to section 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > * * * *
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any

efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

To satisfy the requirements of section 2511(a)(1), the party requesting termination must prove conduct by the parent, sustained for at least the six months immediately prior to the filing of the termination petition, which reveals a settled intent to relinquish the parental claim to a child or a refusal or failure to perform parental duties. *See In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008). Though we do not adhere to any strict definition of "parental duty," a child has a right to essential parental care, and our jurisprudence reveals certain irreducible qualities of a parent's attendant obligation. *In re C.M.*, 255 A.3d at 364. Foremost, it is a positive duty requiring affirmative performance. *Id*. Additionally, parental duty requires that a parent exert herself to take and maintain a place of importance in the child's life. *Id*. (noting that communication and association are essential to the performance of parental duties).

However, even where the evidence clearly establishes that a parent has failed to perform affirmative parental duties for a period in excess of six months, the court must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of parental rights. *Id*. In other words, even if competent

evidence establishes the statutory criteria under subsection (a)(1), consideration of the totality of the circumstances includes evaluation of the following: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to subsection (b). *Id*. at 365.

In this case, the trial court, in finding grounds for termination of Mother's parental rights under section 2511(a)(1), credited Ms. Soto's testimony about Mother's failure to comply with any of her SCP objectives. Trial Court Opinion, 12/7/21, at 12-13. The court further noted that while Mother was permitted supervised visitation with Child, she never visited Child in person. *Id*. at 13.

Following our review, we discern no abuse of discretion by the trial court in finding grounds for termination pursuant to section 2511(a)(1). The record reveals Mother's failure to perform parental duties throughout the entirety of Child's life. Ms. Soto stated that, when she spoke with Mother, she explained Mother's SCP objectives and what was required for reunification. N.T., 10/26/21, at 11. Ms. Soto confirmed that Mother's objectives remained substantially the same throughout the case and that Mother had not complied with any of the stated objectives. *Id*. at 10. Ms. Soto further testified that Child has been placed with Maternal Grandmother since birth and, although

available, Mother never engaged in in-person supervised visitation with Child. *Id*. at 8-9, 11-12, 16. The record thus supports the court's determination, under section 2511(a), that Mother evidenced a settled purpose of relinquishing a claim to Child or failed to perform parental duties.[6]

We next address section 2511(b). Where the grounds for termination under section 2511(a) are met, the trial court shall then give primary consideration to the developmental, physical, and emotional needs and welfare of the child under section 2511(b). *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The emotional needs and welfare of the child have been interpreted to include intangibles such as love, comfort, security, and stability. *Id*. The determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. *Id.* The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond. *Id*.

The evaluation of a child's bonds is not always an easy task. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis,

---

[6] To the extent Counsel raises the issue that DHS failed to make reasonable efforts to reunify Mother with Child, we agree this argument is frivolous. *See In re D.C.D.*, 105 A.3d 662, 672 (Pa. 2014) (concluding that, while potentially relevant, "Neither subsection (a) nor (b) *requires* a court to consider the reasonable efforts provided to a parent prior to termination of parental rights") (emphasis added).

therefore, necessarily depends on the circumstances of the particular case."

*In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (internal citation omitted). When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted). Moreover, a parent's emotional bond with her child, while a major component of the section 2511(b) analysis, is nevertheless only one of many factors to be considered by the court when determining what is in the best interest of the child:

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent [as well as the] continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (internal citations omitted).

In determining that termination of Mother's parental rights favors Child's needs and welfare under section 2511(b), the trial court concluded that there was no necessary and beneficial relationship between Mother and Child. Trial Court Opinion, 12/7/21, at 15. The court stated:

> This [c]ourt heard credible, persuasive testimony from Ms. Soto, who testified [that] Child does not have any type of relationship with [Mother] and there is no parental bond between them. There was no evidence presented to suggest that any bond exists between Mother and [] Child. To the contrary, the evidence shows that [] Child has developed a parental bond with her

- 12 -

Maternal Grandmother. [] Child looks to her for safety, shelter, love, support and care. Ms. Soto opined [that] Child would not suffer any irreparable harm if Mother's parental rights were terminated[,] and it would be in [] Child's best interest to be adopted.

*Id*. at 15-16.

Upon review, we discern no abuse of discretion in the trial court's finding that Child's developmental, physical, and emotional needs and welfare favor termination of parental rights pursuant to section 2511(b). Ms. Soto opined that Child's physical, developmental, and emotional needs would be met by termination. N.T., 10/26/21, at 16. In further expressing her support for adoption, Ms. Soto stated, "[Child] is in a stable home. She is well cared for. All her basic needs are being met. And she only identifies her grandmother as her mom." *Id*. at 15. We note that, while available, Mother never engaged in in-person supervised visitation with Child. *Id*. at 12. Mother instead utilized virtual video calls through Facebook. *Id*. As a result, Child has no relationship with Mother and identifies Maternal Grandmother, the party who meets her daily needs, as her parent. *Id*. at 12-13, 16. When asked about opposition to reunification, Ms. Soto explained, "There is no relationship between [Mother] and [Child]. [Child] does not know [Mother] as a parental caregiver." *Id*. at 12-13. Ms. Soto further opined that Child would not suffer harm if the court terminated Mother's parental rights. *Id*. at 13. Maternal Grandmother is willing, and desires, to adopt Child. *Id*. at 17. Ms. Soto accordingly testified that Child would suffer harm if removed from Maternal

Grandmother. *Id*. [7] The record, accordingly, supports the trial court's finding under section 2511(b) that termination would serve Child's best interests.

Following our independent review, and based on our conclusion that trial court properly terminated Mother's parental rights under section 2511(a)(1) and (b), we agree with Counsel that the appeal from the decree terminating Mother's parental rights is wholly frivolous.

Given our disposition concerning termination of Mother's parental rights, her appeal from the goal change order is moot. *See In the Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) (concluding that a goal change challenge is moot in light of affirmance of a decree terminating parental rights); *accord In re Adoption of A.H.*, 247 A.3d 439, 446, *appeal denied*, 258 A.3d 1144 (Pa. 2021) (stating, "[T]he effect of our decision to affirm the orphans' court's termination decree necessarily renders moot the dependency court's decision to change Child's goal to adoption").

Petition to withdraw granted. Decree affirmed. Appeal from order dismissed.

---

[7] Child has been in placement with Maternal Grandmother for her entire life and is entitled to permanency and stability. As we have stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re C.D.R.*, 111 A.3d at 1220. Rather, "a parent's basic constitutional right to the custody and rearing of [her] child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of . . . her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citation omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2022